## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| STEPHEN RANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:07 CV 480 |
| | ) | |
| DEVIN BRUBAKER, et al. | ) | |
| | ) | |
| Defendants | ) | |

## OPINION AND ORDER

Before the Court are multiple Motions for Partial Summary Judgment filed by *pro se*
Plaintiff, Stephen Range directed toward various defendants and entities.[1]  Each of the defendants
have responded and Range has replied.  For the following reasons, all of the Plaintiff's Motions for
Partial Summary Judgment will be DENIED.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.
*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).   A scintilla of
evidence in support of the non-moving party's position is not sufficient to successfully oppose
summary judgment; "there must be evidence on which the jury could reasonably find for the

---

[1]These would be docket entries 110, 113, 114, 118, 120, 138, 160, 168, 169, 176, 211, 213, and
255.

plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512. Mindful of these principles the court turns now to the case at hand.

**FACTUAL BACKGROUND**

On October 10, 2007, Range brought this 42 U.S.C. §1983 civil rights action against numerous Defendants working in various capacities for the City of South Bend, Indiana ("the City"). (Docket # 1.) On July 16, 2008, Range filed a Second Amended Complaint in which he names a total of twenty-eight defendants. Range's Second Amended Complaint contains a legion of allegations, including that employees of the City's Animal Care and Control Division ("Animal

Control") illegally searched his property, impounded his dogs, denied him licensing for his dogs, and denied him access to public services and records; and that the City's Animal Control Commission ("the Commission") did not hear his appeal or interview him for a position on the Animal Control Commission. (*See, e.g.,* Second Am. Compl. ¶¶ 2, 4, 11, 17, 20-25, 27-28, 34, 44, 55.). In addition, Range challenges various City Ordinances relating to the licensing of dangerous animals, argues that his First Amendment rights have been violated by various City officials and that he has been repeatedly falsely arrested or subject to other harassment by City officials. As noted, Range has filed the present motions for partial summary judgment seeking rulings on his claims.

Before turning to the substance of the pending motions, two preliminary matters must be addressed. First, Range repeatedly argues in his motions that the defendants have "sham pleaded" in that they have been untruthful in their assertions to the court, have perjured themselves in their affidavits, and have lied in their interrogatory responses and in their Answer to the Plaintiff's Complaint. Such averments are generally insufficient to prevail in a motion for summary judgment. *See Williams v. Kenney,* 2008 WL 3540408, 5 (E.D.Cal.,2008) ("... many of the statements made in plaintiff's declarations opposing the defendants' motion for summary judgment are conclusory assertions that defendants are lying and that plaintiff "disputes" their averments. Such averments are generally insufficient to defeat a motion for summary judgment."). This is because a dispute relating to the facts does not, in and of itself, constitute perjury or justify the entry of judgment in favor of a party. Rather, the disputed facts become part of the credibility assessment to be determined by the fact-finder. Accordingly, where Range makes these assertions, his motions are DENIED.

Secondly, Range has filed this lawsuit pursuant to 42 U.S.C. §1983 and thus, it is helpful at this juncture to set forth the basic elements required to establish §1983 violations. Under §1983, any

person may sue a state official in the official's individual capacity when that official "under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ..." 42 USC § 1983. Section 1983, however, is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811 (1994). Thus, to prevail on a claim under section 1983, plaintiff must therefore show "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996); *see also, Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980).

Suit may be brought against individual officers in either their official or individual capacity or both. The distinction is telling because where suit is brought against an individual in his official capacity it is really a claim against the municipality, *see, Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997), and hence a plaintiff must show that the municipality maintained an express policy of depriving its citizens of their constitutional rights, *see, McTeague v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995), that its practice of depriving citizens of their constitutional rights, though not authorized or not written, was so widespread so as to have the force of law, *Board of County Comm'n of Bryan v. Brown,* 117 S.Ct. 1382, 1388 (1997), or that the individual in question was a person with final policymaking authority who made a deliberate choice to either deprive plaintiff of some constitutional right, *see, West v. Waymire*, 114 F.3d 646, 651-52 (7th Cir) *cert. denied*, 118 S.Ct. 337 (1997), or acquiesced in such a deprivation turning a "blind eye for fear of

what [he] might see, *Lincoln v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

In many of his motions, Range moves for summary judgment against individuals as well as their employing entity such as the South Bend Police Department, the City (and more specifically, the Department of Law and the Department of Code Enforcement), and Animal Control. Insofar as Range is attempting to sue the defendants in their official capacity, it is clear that the plaintiff's motions for summary judgment must be denied.. The record is bereft of any undisputed evidence, that the South Bend Police Department or the City (or any of its departments) maintained an express policy of depriving its citizens of their constitutional rights, let alone that its practice of depriving citizens of their constitutional rights was so widespread so as to have the force of law as would be required to establish an official capacity claim. Accordingly, to the extent that the Plaintiffs motions seek summary judgment against the South Bend Police Department, the City, or Animal Control, the motions are DENIED.[2]

With these two preliminary matters out of the way, the court turns now to the remaining substance of the various motions for summary judgment.

## I. Motion for Summary Judgment and Sanction as to the City of South Bend Police Department and Defendant Scott Ruszkowski [DE 110]

In the early morning hours of March 1, 2007, Defendant Scott Ruszkowski, a South Bend police officer, received a dispatch to the Burger King Restaurant in downtown South Bend, Indiana relating to an alleged altercation taking place in the parking lot.[3] When Ruszkowski arrived at the Burger King, a restaurant employee immediately directed Ruszkowski to a vehicle that was leaving

---

[2]Range also makes a blanket assertion that the City failed to properly train employees of Animal Control. However, he has not set forth any facts to support such an assertion.

[3]The following facts are taken from the summary judgment record and are viewed in the light most favorable to the Defendants, the nonmoving parties.

the restaurant parking lot. Ruszkowski then followed the vehicle and conducted a traffic stop. As he approached the vehicle, Ruszkowski noticed that there were four occupants in the vehicle. Ruszkowski smelled alcohol from inside the vehicle and began to interview the four occupants, including Range. According to Ruszkowski, Range asked several times if he could exit the vehicle. Ruszkowski responded to Range by telling him that if he exited the vehicle, he would be subjected to a frisk. Range did, in fact, exit the vehicle and another officer, not Ruszkowski, conducted a pat down search. During Ruszkowski inquiries to the vehicle occupants, Range admitted that he had been drinking alcohol. At some point during the stop, Range became verbally combative with Ruszkowski and another South Bend police officer placed Range under arrest for public intoxication and disorderly conduct.

Range alleges that the record supports a finding that he was arrested without probable cause and that his First Amendment rights were violated by Ruszkowski. Turning first to Range's claim of false arrest, to prevail on summary judgment he must show that probable cause for his arrest was lacking. *See Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir.1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."). If probable cause to arrest is found to exist, it "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir.2006). Police officers possess probable cause to arrest when " 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Id.* (quoting *Kelley,* 149 F.3d at 646). Probable cause is not evaluated by the court based upon "the facts as an omniscient observer would perceive them," but instead is determined by the facts "as they would have appeared to a reasonable

person in the position of the arresting officer." *Id.* (quoting *Kelley,* 149 F.3d at 646; citing *Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir.2000)).

Here, Range has not demonstrated that the undisputed facts show the absence of probable cause for his arrest. In his affidavit, Ruszkowski sets forth facts which, if believed by the fact-finder, would support a finding of probable cause to arrest Range for public intoxication and disorderly conduct. And, even in his own submissions, although Range denies being uncooperative, he admits that he told Ruszkowski he had been drinking alcohol which permits an inference that probable cause may have existed for his arrest for public intoxication. Accordingly, at this stage, there is no basis for this Court to grant Range's motion for summary judgment as to his claim of false arrest and his motion for summary judgment [DE 110] is DENIED.

Moreover, Range has not provided any undisputed factual basis for his claim that his First Amendment rights were violated by Ruszkowski in any way. Abusive, vulgar, derisive, and provocative speech is protected under the First Amendment even when directed at a police officer. *Lewis v. New Orleans,* 415 U.S. 130, 133-34 (1974); *Houston v. Hill,* 482 U.S. 451, 462-63 (1987). Indeed, "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston,* 482 U.S. at 462-63, 107 S.Ct. at 2509-10 (1987). "It is ... fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." *Gainor v. Rogers,* 973 F.2d 1379, 1387 (8th Cir.1992) (citations omitted).

Here, defendants adduced testimony that Range admitted he had been drinking alcohol and then became verbally combative and abusive with the officers to contest the stop of the vehicle in which he was an occupant. Defendants contend that it was not his speech at all, the created the

situation for his arrest, but his public intoxication combined with his conduct which became unruly.

Range, of course, denies these assertions. But, these are sufficient factual disputes which require

a fact-finder to determine whether Range's arrest for public intoxication and disorderly conduct were

justified. Accordingly, Range's motion for summary judgment as to the First Amendment claim is

also DENIED [DE 110].

II.     **Plaintiff's Motion for Partial Summary Judgment as to Charles Leone and Ann-Carol Nash** [DE 113]; **Motion for Summary Judgment as to Ann-Carol Nash** [DE 138]

In his Amended Complaint, Range asserts claims against the City's Department of Law and

Charles Leone ("Leone"), the City Attorney, contending that the City violated his civil rights by

denying him access to the Mayor's office, the Controllers office, the Department of Code

Enforcement, and Animal Control, and that he was advised that he was not to speak directly with

any City employees. In particular, Range references a letter he received on November 30, 2007

from Leone wherein Range was advised that because he had filed lawsuits against the City, any

contact that Range sought with the City should be made through the City Attorney's office and the

City's legal department. Range also asserts claims against Ann Carol Nash, an Assistant City

Attorney, claiming that she interfered with Range's right to have his dog licensed as permitted under

the South Bend Municipal Code. Range has now moved for partial summary judgment against the

City's law department and individual defendants Ann-Carol Nash and Charles Leone.

Other than his assertions that the defendants have lied in their sworn responses and answers

to the Court, Range has not set forth any legal basis for the Court to conclude that summary

judgment is appropriate. From the Defendants' submissions it is evident that there exist material

facts which preclude the court from granting summary judgment to Range on these claims.

Accordingly, Range's motion for partial summary judgment must be DENIED. [DE 113].

Range also filed a separate motion for summary judgment directed toward Ann-Carol Nash wherein he seeks summary judgment on his claim that Defendant Nash violated his constitutional rights by refusing to grant him a breeder's license so that he could conduct lawful breeding of his American Pit bull terrier. In particular, Range alleges that Ann-Carol Nash wrongfully denied his June 1, 2007 application for a breeding license because the zoning of his property did not permit animal breeding. Range further argues that he complied with all the statutory requirements and properly completed the application but was still denied the license. In response, the Defendant has submitted an affidavit wherein she avers that the property for which Range sought a breeder's license was zoned SF2 (single family residential) and the breeding of animals is not permitted in that zoning district. In light of this affidavit, it is clear that genuine issues of material fact exist as to whether Defendant properly denied Range his breeder's license. For this reason, summary judgment is not appropriate. Range's Motion for Summary Judgment as to Ann-Carol Nash is DENIED. [DE 138].

## III. Motion For Partial Summary Judgment Regarding Constitutionality of Ordinance [DE 114]

Next, Range moves for partial summary judgment contending that the City's ordinance relating to the licensing of dangerous animals is unconstitutional on its face and constitutes a "black code" which Range asserts is a law restricting the civil rights of African Americans and denying them due process of law. Range does not indicate how he believes the ordinance is unconstitutional nor does he specify the legal basis for his motion. Rather, the focus of Range's motion is on the fact that sections of the ordinance differentiate between breeds of dogs and require separate registration

procedures for the licensing of those dogs.  He further avers that the ordinance promotes false stereotypes of what breeds of dogs can be considered dangerous animals.

Assuming that Range's argument is grounded in either the due process or equal protections clauses, to be successful, he must demonstrate either that the ordinance infringes a fundamental liberty interest or affects a "suspect class."  If the ordinance does neither than the question is whether the ordinance is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. " *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay County,* 57 F.3d 505, 514 (7th Cir.1995) ("We have interpreted 'arbitrary and unreasonable' to mean invidious or irrational.").

The adjective "fundamental" in this setting is reserved for deeply-rooted, sacrosanct rights such as "the right of a man and woman to marry, and to bear and raise their children." *Brokaw v. Mercer County,* 235 F.3d 1000, 1018 (7th Cir.2000). The right to license and breed particular dogs is an entirely different matter.  It is not a fundamental right.  Nor does the ordinance itself create distinctions between suspect classifications, although Range does make an argument, without factual support, that the Defendants apply the licensing ordinance in a manner that is discriminatory to African -Americans.  Thus, Range must rely on the  second alternative of the inquiry, whether the "governmental action passes the rational basis test if a sound reason may be hypothesized." *Pro-Eco,* 57 F.3d at 514.

The City points out that other than his sweeping allegations of unconstitutionality, Range has not provided any factual basis to support his motion nor has he produced any evidence from which the court could conclude that the City acted arbitrarily and capriciously in the passing of the dog licensing and ordinance in question .  Absent facts to the contrary, the court can uphold an ordinance

if a sound reason for the governmental action can be hypothesized and certainly, an ordinance designed to require the licensing of dangerous animals can be reasonably calculated to promote public safety. Thus, there is no legal basis for the court to grant Range's motion. Range's Motion is DENIED.

**IV.** **Motion for Summary Judgment Directed at the Animal Control Commission of the City of South Bend** [DE 118]

Range also seeks summary judgment against the Commission contending that the Commission is a sham because it does not exist in accordance with City ordinances and has not functioned as it is required by the City ordinances. According to Range, the Commission does not have proper board members that reside within the City as required and it has not had a meeting or heard citizen complaints in nearly four years.

It is unclear from Range's filings what the exact nature of the Constitutional violation is that he is asserting. However, it is reasonable under these circumstances, and by providing Range a few fair inferences, that his challenge is to the alleged absence of due process he received since the Commission was never formally functioning. For instance, Range contends that the Commission is required to hear complaints regarding Animal Control and that he was deprived of that ability because the Commission did not hold required meetings and/or was not legitimately formed as required by local ordinance.

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV, § 1. The Due Process Clause has a procedural component and a substantive one. "The two components are distinct from each other because each has different objectives, and each imposes

different constitutional limitations on government power." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996).[4] "Although both substantive and procedural due process violations must "deprive" an individual of a protected constitutional interest, and the deprivation must be "arbitrary in the constitutional sense," *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261 (1992), each imposes upon a plaintiff a different burden to state a cognizable claim." *Id.* at 1349. "Arbitrary in the constitutional sense" for procedural due process purposes means conduct undertaken with something more than negligence. *Daniels v. Williams*, 474 U.S. 327 (1986). Indeed, the Supreme Court held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels,* 474 U.S. at 328.

This elementary lesson--that negligent deprivations of life, liberty, or property are not actionable under 42 U.S.C. § 1983--is applicable to the allegations made by Range here. The Defendants assert that there is no evidence to support the notion that their failure to properly constitute and convene an Animal Control Commission, as it is required to do by ordinance, were actions intended to harm the Plaintiffs. In fact, the record is lacking any evidence of the Defendants intent or lack thereof with respect to the creation of the Animal Control Commission and without facts that support the notion that the defendants made a deliberate choice, Range cannot prevail on his summary judgment motion.

---

[4]"A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision." *Howard*, 82 F.3d at 1349. "Substantive due process, on the other hand, serves the goal of preventing "governmental power from being 'used for purposes of oppression,' " regardless of the fairness of the procedures used." *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).

More importantly, even if the acts alleged were intentional as Range alleges, this does not violate due process so long as adequate state post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Here, the court has not been informed that there are no state post-deprivation remedies available to Range or why state available post-deprivation remedies were inadequate. This failure is likewise fatal to their claim of a procedural due process violation. Thus, Range's Motion for Summary Judgment is DENIED. [DE 118].

## V. <u>Motion for Summary Judgment as to Lynn Berndt and Sarah Janis</u> [DE 120]

Range moves for summary judgment as to Defendants Lynn Berndt ("Berndt") and Sarah Janis ("Janis") contending that Berndt maliciously prosecuted him and Janis falsely arrested him based on events occurring on June 1, 2007. The facts are as follows:[5]

Janis is a police officer with the City. On June 1, 2007, she was dispatched to the offices of Animal Control located at 105 S. Olive Street, in South Bend to investigate a report that an individual was refusing to leave the premises. Upon her arrival at the scene she spoke with Sara Bernth, an animal control employee, who identified Range as the individual refusing to leave the premises. Bernth further indicated to Janis that Range had been to the Animal Control offices before and had caused some disruption there. As Janis and Bernth were speaking, Range became combative and confrontational and continued to refuse to leave the premises. Range disputes that he was combative and confrontational and believes he had a legitimate right to be on the property. Janis then placed Range under arrest for trespassing. Subsequently, Lynn Berndt, City prosecuting

---

[5]Again, the facts are taken in a light favorable to the Defendants, the non-moving parties.

attorney filed an information against Range for trespassing pursuant to Indiana Code §35-43-2-2..

In his motion for summary judgment, Range asserts that Janis falsely arrested him for trespassing and that Berndt maliciously prosecuted him. As has been the case with previous defendants, the factual record is disputed as to whether probable cause existed for Range's arrest. Under Indiana law, the offense of criminal trespass occurs when a person "not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent. " Ind.Code 35-43-2-2(a)(2). Here, the facts set forth by Defendants, some of which Range disputes, create an issue of fact as to whether probable cause existed for his arrest. Thus, because of these factual disputes, Range is not entitled to summary judgment.

As for the decision by Berndt to file an information against Range, that action is protected by absolute prosecutorial immunity. "[T]he degree of immunity prosecutors are afforded depends on their activity in a particular case." *Anderson v. Simon,* 217 F.3d 472, 475 (7th Cir.2000). A prosecutor is absolutely immune from suit when she is performing functions-such as determining whether charges should be brought and initiating a prosecution-"intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons,* 509 U.S. 259, 270, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); *Spiegel v. Rabinovitz,* 121 F.3d 251, 257 (7th Cir.1997). A prosecutor is not entitled to absolute immunity, however, when she is performing "acts of investigation or administration." *Buckley,* 509 U.S. at 270, 113 S.Ct. 2606 (internal quotation marks omitted).

In his motion, Range alleges only that Berndt filed false charges against him. The decision whether to file criminal charges however, is an action that is "intimately associated with the judicial

phase of the criminal process."  Further prosecutorial immunity applies even when a prosecutor "initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Imbler v. Pachtman,* 424 U.S. 409, 427-28 (1976); *Anderson v. Simon,* 217 F.3d 472, 475-76 (7th Cir.2000).  Thus, Range's Motion for Summary Judgment must be denied as it relates to Berndt's decision to prosecute him..

## VI.  Motion for Summary Judgment as to Suzanne Dieter and Gary Libbey [DE 160]; Motion for Partial Summary Judgment as to South Bend Police Department and Suzanne Dieter[DE 211]

Range's next motions for summary judgment focus on the South Bend Police Department, Animal Control, Suzanne Dieter ("Dieter") and Gary Libbey ("Libbey").  In his motions, Range contends that there is no dispute of material fact that they violated his First, Fourth, and Fifth Amendment rights.  With respect to the second motion for summary judgment related to Dieter, Range argues that she violated Indiana Code §9-30-2-2 when she stopped and questioned him because she was not wearing her uniform and badge.  Both motions arise out of the same set of facts, which are as follows:

On July 13, 2007, Range asserts that he was taking part in a public gathering to petition the government for "a correction or repair of South Bend Municipal Code" relating to the licensing of American Pit Bull terriers.  Range further asserts generally that his right to freedom of assembly was violated by the defendants.

On that day,  South Bend police officer Dieter, who was off-duty at the time, observed several men and six dogs that appeared to be pit bulls in a vicinity near a group of young children. Dieter approached a man later identified as Range, who was present with the dogs, and asked if the

dogs were licensed. Range responded that all of the dogs were licensed except one and told Dieter that she could check it out. Dieter, in turn, contacted Animal Control, to determine whether the dogs were, in fact, licensed. Dieter was instructed to look at the dog tags on the dogs to get their identification numbers. According to Dieter's police report, Range became loud and belligerent, stepped into the street yelling at the cars to pull over and "come and watch the police harass the Africans." Dieter instructed Range to stop yelling and interfering with the progress of traffic. Range continued and further refused to provide the dog tag numbers or licensing information for the dogs. At some point Dieter reported to Libbey, the Animal Control Supervisor, that Range had several dogs that appeared to be American pit bull terriers and these dogs were on the public right of way within the City in violation of the South Bend Municipal Code. .When Libbey arrived on the scene, he determined that three of the dogs were not properly licensed and impounded those three dogs. The dogs also were not muzzled in accordance with the requirements of the South Bend Municipal Code and, according to Dieter, were being controlled by minors which, again is contrary to the statute.

Range contests the above facts and argues that the dogs were properly licensed. He asserts that on July 14, 2007, two of the impounded dogs were returned to him because they were, in fact, lawfully licensed in the City. Further, the third allegedly unlicensed dog was returned to Range on July 17, 2007 because the dog was not required to be licensed pursuant to the South Bend Municipal Code, because the dog was under the age of six (6) months.

In his motions, Range contends that the impounding of the dogs violated his Constitutional rights in that Dieter subjected him to racial profiling, and that Dieter and Libbey took his dogs without probable cause or a warrant, and violated his right to free assembly.

Turning first to his allegations of racial profiling, there is no factual support presented by Range to support such a contention, other than his own speculation and say-so. As for his contention that his dogs were wrongfully impounded, the South Bend Municipal Code requires that all dangerous animals wear a muzzle when they are on public property and be under the care and control of a person over 18. Similarly, the South Bend Municipal Code authorizes Animal Control to impound animals that are not in compliance with the Code provisions. According to Libbey's affidavit, Range's dogs were on public property not wearing a muzzle or dog tags and were not under the care and control of a person over 18. Further, Libbey investigated whether the dogs were properly licensed and believed (wrongly it turns out) they were not. Under this scenario, however, there exists a factual dispute for the Defendants' actions which cannot be resolved at summary judgment as to whether the dogs were properly impounded.

As was the case with his other procedural due process claims in this case, whether the deprivation of his property rises to the level of a due process violation depends on the state of mind of the defendants. Although Range seeks summary judgment as to his due process claim, he has, once again, not demonstrated an intent above mere negligence for the Defendants' actions nor has he demonstrated that he has no post-deprivation state law remedy. Thus, Range's Motion for summary judgment [DE 160] is DENIED.

In his second motion for summary judgment, Range challenges the fact that Dieter was off-duty at the time she stopped to question him. He cites to Indiana Code 9-30-2-2 which he contends requires police officers to wear "a distinctive uniform and a badge of authority" or to be operating "a motor vehicle that is clearly marked as a police vehicle" during the course of an arrest or issuance of a traffic information. He further asserts that Dieter falsely imprisoned him when she stopped him

in violation of the Fourth amendment.

With respect to the Indiana Code requirements, it is clear that they are inapplicable in this case. Range was not arrested nor was he issued any sort of traffic citation for his conduct that day. As for whether the stop violated the Fourth Amendment, not all encounters between law enforcement officials and citizens implicate the protections of the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968). A consensual encounter between an officer and a private citizen does not raise Fourth Amendment concerns. *Florida v. Rodriguez,* 469 U.S. 1, 5-6 (1984). Even if officers do not suspect criminal activity, the Fourth Amendment does not prohibit asking questions if the encounter is consensual before cause for a *Terry* stop arises. *United States v. Griffith,* 533 F.3d 979, 983 (8th Cir.2008). However, an officer is warranted in effectuating a *Terry* stop when she can "point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant an intrusion." *Terry v. Ohio,* 392 U.S. 1, 21 (1968).

Here, there exist genuine issues of material fact precluding Range from prevailing at summary judgment. Officer Dieter indicated that she witnessed dogs, appearing to be pit bull terriers, on the public way in violation of a South Bend Municipal Ordinance. This is a sufficient factual basis to conduct a *Terry* stop to inquire whether, in fact, a criminal violation is taking place. Thus, Officer Dieter cannot be said, as a matter of law, to have violated Range's Fourth Amendment rights and Range's Motion for Summary Judgment is DENIED. [DE 211].

**VII.** **Motion for Partial Summary Judgment as to Devin Brubaker, Animal Care and Control, Karen Balspaugh, and Keith Vergon** **[DE 168]**

Range also seeks summary judgment against Defendants Brubaker, Balspaugh and Vergon arising from the investigation of his dogs and their eventual impoundment. The events relating to

these defendants began in November 2006 when an Animal Control officer responded to a call about three unlicensed and neglected pit bull terriers kept in the basement of 2018 Kemble Drive. An individual named Justin Richhart ("Richhart") was the owner of the home. After further investigation, the officer learned that one of the dogs had a severe skin condition. The officer left an animal welfare alert at the residence advising the owner of the licensing and care requirements for animals harbored at the residence.

Thereafter, on December 21, 2006, Defendant Brubaker arrived at 2018 S. Kemble for a re-check and found no improvement in the condition of the animals since the last visit. Again, Brubaker left an animal welfare alerts regarding licensing and neglect of animals at the residence. Subsequently, Animal Control received a message from Richhart wherein he stated that he had surrendered two of the dogs to the Animal Control office in Michigan and the third dog was given to a new owner in Michigan. However, Animal Control could not locate any of the surrendered dogs nor was Richhart able to provide information on the owner of the third dog.

During a January 31, 2007 recheck, two more unlicensed pit bull terriers were viewed inside the residence. One dog appeared underweight and there were no tracks in the snow surrounding the property to indicate that the dogs had been permitted to go outside. Thereafter, Animal Control Officer Devin Brubaker requested a warrant to impound the neglected and unlicensed Pit Bull Terriers from the residence of 2018 S. Kemble. The warrant was granted and was served at the residence on February 3, 2007. Two adult dogs and a puppy were impounded as a result of the warrant's execution.

Shortly after the dogs were impounded, Officer Keith Vergon of the South Bend Police Department was dispatched to the Animal Control offices at 105 S. Olive Street in reference to an

individual, eventually identified as Range, refusing to leave the property. Range had arrived at Animal Control to retrieve his dogs and, upon being informed of the Animal Control policy regarding the release of animals, Range became angry and refused to leave the property. When Officer Vergon arrived on the scene, Vergon informed Range that he needed to leave the property and return in a few days to collect his dogs. Accordiing to the police report, Range began yelling that he did not need to leave the property because it was "public property." Eventually, Range's friends persuaded him to exit the building but, when Range reached the parking lot, he dropped to his knees and again refused to leave. Range then informed Officer Vergon that the only way he was leaving the property was if he was placed under arrest. Officer Vergon then pulled his squad car up to Range and turned on the video recorder to show Range kneeling in the parking lot. Vergon then arrested him for resisting law enforcement and transported him to the county jail.

On February 5, 2007, after Range was released from jail, he returned to the Animal Control offices to reclaim his dogs. Animal Control employee Karen Balspaugh denied him entry to the shelter and asked him to leave or she would contact the police. Range then left and was stopped by an unnamed South Bend police officer and issued a notice informing him he was no longer permitted on 105 S. Olive Street where the Animal Control offices are located.

In his motion, Range argues again that he was subject to false arrest in violation of the Fourth Amendment. However, the facts leading to his arrest as articulated by the Defendants give rise to a genuine issue of material fact as to whether probable cause existed for his arrest.

The same sort of factual disputes exist with respect to Defendant Brubaker. Brubaker has set out facts which demonstrate that pursuant to the South Bend Municipal Code, he was justified in investigating complaints about the animals being harbored at 2018 S. Kemble. To the extent that

Range disputes these facts, that is a question of fact for the fact-finder to resolve and his motion for summary judgment must be DENIED.

With respect to Balspaugh, Range has not articulated what constitutional rights of his have been violated by her conduct. He has set forth no facts to support a claim of a constitutional violation. Accordingly, Range's Motion for Summary Judgment as to these defendants is DENIED.

## VIII.  **Motion for Partial Summary Judgment as to Animal Control and Robert Sheler** [DE 169]

Range moves for summary judgment against Defendant Sheler ("Sheler") contending that he was falsely imprisoned by Sheler's actions and/or subject to false arrest. The events giving rise to Range's claim begin on October 29, 2007. Defendant Sheler, an employee of Animal Control, was working at the offices at 105 S. Olive Street. On that day, Range arrived at the Animal Control offices and, according to Sheler's affidavit, he "quickly became belligerent and began yelling names at myself, including, but not limited to being called a racist." Sheler further avers that he became fearful for his personal safety as a result of Range's escalating conduct and so he activated what he believed to be a general burglar alarm. The burglar alarm, in turn, alerted the South Bend police department and police vehicles were dispatched to the scene. As one police vehicle arrived on the scene, that police officer radioed that a white Chevy Caprice was leaving the parking lot. South Bend police officer, Timothy Cichowicz, had a visual on the vehicle and initiated a traffic stop. Range was inside the vehicle and informed Officer Cichowicz that he had issues over his dogs and had, in fact, been at the Animal Control offices at the time when the alarm was triggered. Officer Cichowicz learned that Range had previously been served paperwork indicating he was not permitted to return to Animal Control property. Despite learning this information, Officer

21

Cichowicz released Range at the scene since he was uncertain whether the no trespass order was still in effect.

In his motion, Range argues that the act of pulling the hold-up alarm triggered a series of events that led to the police stop and a violation of his rights. He contends that he was falsely imprisoned in violation of the Fourth Amendment. However, the record is factually divergent on this issue. First, there is a question of fact as to whether Range was "imprisoned" or "arrested" in any fashion by Sheler. Certainly, it may be argued that the police stop of the vehicle constituted a "seizure" under the Fourth Amendment but that conduct was not the result of anything that Sheler did. Thus, at this point, it is impossible to grant Range's motion for summary judgment when there exists a dispute over whether any constitutional violation by Sheler occurred. Accordingly, this motion for summary judgment is DENIED.

## IX.    Motion for Partial Summary Judgment as to Devin Brubaker, Animal Control, and Kimberly Lucas [DE176] and [DE 255]

In this motions, Range seeks summary judgment against Animal Control Officers, Kimberly Lucas ("Lucas") and Devin Brubaker ("Brubaker") contending that they violated his Fourth Amendment right to be "secure against unreasonable seizures." The facts underlying this claim are as follows:

On April 5, 2007, Brubaker filed an affidavit of probable cause requesting that a warrant be issued to impound[6] dogs located at 805 N. Johnson. The residence was owned by Danny Thomas and Melissa Tijerina. Underlying the warrant application are the following facts:   Animals at this

_____

[6] According to the South Bend Municipal Code, animals harbored in violation of the Animal Control Ordinances may be impounded.

residence had been the subject of complaints involving animal control ordinance violations. On March 24, 2007, Lucas and Brubaker responded to a complaint that four or more pitbull terriers harbored by Thomas and Tijerina were loose, tearing into trash, and acting aggressively toward individuals. Brubaker observed an area in the front yard set up for the keeping of dogs but there was no food or water and no doghouses. As Brubaker approached the door he heard dogs barking inside and noticed the yard was "littered" with animal waste and trash. No one answer initially; however, Officer Lucas eventually spoke with Thomas about her concerns and the possibility of ordinance violations.[7]

However, on March 30, 2007, Brubaker again noticed two unlicensed pitbulls in the front yard of the residence. Brubaker photographed the property and the animals in the yard. The lawn was in the same condition it had been a week earlier and no occupants of the residence answered when Brubaker knocked. On both the March 24 and the March 30 visits, animal welfare alerts were left at the property advising the owner of the licensing and care requirements for the animals they harbored.

On April 5, 2007, the judge issued a warrant for the inspection and seizure of any unlicensed or dangerous dogs on the property. The warrant was served on April 7, 2007 and three dogs were impounded as a result of the execution of the warrant.

In his motions, Range contends that Brubaker and Lucas violated his rights by trespassing on his property, taking photographs of the property without permission, and entering/trespassing on his property. The facts, however, read favorably to the defendants, indicate that Brubaker and Lucas

---

[7]Subsequently, on March 27, 2007, Melissa Tijerina licensed one of the dogs she was harboring at the residence.

were conducting a visual inspection of the residence from outside its perimeter pursuant to their authority as Animal Control officers as well as in response to complaints they had received that the animals were acting dangerously. Whether the actions of Brubaker and Lucas are violative of the Fourth Amendment are subject to dispute. Lucas has submitted an affidavit wherein she avers that she did not, at any time, physically enter the yard or the residence without a warrant. In contrast, Range contends that Lucas and Brubaker scaled his fence and took pictures of the yard and the dogs. Brubaker and Lucas claim that they did not. These are facts subject to dispute and therefore, summary judgment is inappropriate. Range's Motion for Summary Judgment is DENIED as to both DE 176 and DE 255.

**X.**   **Motion for Partial Summary Judgment as to the Denial of the Right to Inspect and Copy Public Agency Records [DE 213]**

In his final Motion for Partial Summary Judgment, Range asserts that certain defendants violated his civil rights by denying and interfering with his rights under Indiana Code §5-14-3-3 which permits citizens the right to inspect and copy public records, and Indiana Code §5-14-3-7 which prohibits the loss alteration and destruction of public records. In particular, he alleges that Defendants Gary Libbey, Catherine Toppel, Animal Control, the Department of Law, and the Department of Code Enforcement "recklessly, knowingly, and intentionally destroyed and damaged public records." Range further alleges that through letters written by each, Defendant Charles S. Leone and Thomas L. Bodnar, violated his civil rights by informing Plaintiff that he was not to visit various public agencies and had no right to inspect public records of Animal Control.

The facts related to this motion are that on November 30, 2007, Range received a letter from Defendant City Attorney Leone wherein Range was advised that all communications with any of

the entities that he had sued should be made through the Department of Law. Following the receipt of that letter, Range received a letter from Assistant City Attorney Thomas Bodnar related to a request Range had made to inspect various documents at Animal Control. Range also asserts that Defendants Libbey and Toppel destroyed a file that existed for 1350 Adams Street.

A review of the documents filed by Range and the response by the Defendants demonstrates that genuine issue of material fact exists which precludes summary judgment on these claims. First, the content of the letters from Leone and Bodnar speak for themselves. Although Range contends that he was denied access to particular documents and instructed not to contact various offices related to his lawsuit, there are facts in the record (and in the letters themselves) which contradict Range's assertions. Moreover, there is a conflict in the evidence as to whether a file existed at all, let alone whether it was destroyed, for the residence at 1350 Adams Street. Accordingly, Range's Motion for Summary Judgment is DENIED. [DE 213].

## CONCLUSION

Based on the foregoing, the Plaintiff's Motions for Summary Judgment, Docket Entries 110, 113, 114, 118, 120, 138, 160, 168, 169, 176, 211, 213, and 255 are DENIED.

Entered: This 31st day of March, 2009

s/ William C. Lee
United States District Judge