**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| STEPHEN RANGE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 3:07 CV 480 |
| | ) |
| DEVIN BRUBAKER, et al. | ) |
| | ) |
|     Defendants | ) |

## OPINION AND ORDER

Before the Court is Defendant Devin Brubaker's ("Brubaker's") Motion for Summary Judgment [DE 389]. In lieu of filing a response to the motion, Plaintiff Stephen Range ("Range") filed a "Motion to Strike Brubaker's Affidavit" [DE 411] and a "Motion for Sanctions for Submitting Affidavit in Bad Faith" [DE 415].[1] Brubaker also filed a Motion to Amend his Affidavit [DE 432]. For the following reasons, the Motion to Amend the Affidavit will be GRANTED. The Motion for Summary Judgment will be GRANTED in part and DENIED in part. The Motion to Strike and the Motion for Sanctions will be DENIED.

## APPLICABLE STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.

---

[1] This Motion may actually be Range's response although not captioned as such. He does present arguments and seemingly objects to some of the facts recited in the Defendant's Motion for Summary Judgment.

1

*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512. Mindful of these principles the court turns now to the case at hand.

**FACTUAL BACKGROUND**

On October 10, 2007, Range brought this 42 U.S.C. §1983 civil rights action against numerous Defendants working in various capacities for the City of South Bend, Indiana ("the City").

(Docket # 1.) On July 16, 2008, Range filed a Second Amended Complaint in which he names a total of twenty-eight defendants. Range's Second Amended Complaint contains a legion of allegations, including that employees of the City's Animal Care and Control Division ("Animal Control"), specifically Defendant Brubaker, illegally searched his property, impounded his dogs, denied him licensing for his dogs, and denied him access to public services and records; and that the City's Animal Control Commission ("the Commission") did not hear his appeal or interview him for a position on the Animal Control Commission. (*See, e.g.,* Second Am. Compl. ¶¶ 2, 4, 11, 17, 20-25, 27-28, 34, 44, 55.).[2] In addition, Range challenges various City Ordinances relating to the licensing of dangerous animals, argues that his First Amendment rights have been violated by various City officials and that he has been repeatedly falsely arrested or subject to other harassment by City officials. With respect to Defendant Brubaker, Range alleges a panoply of wrongs, the most significant of which is that Brubaker violated his Constitutional rights by trespassing on his property and seizing his animals without justification. Of lesser import are Range's claims that Brubaker issued him a false breeder's license, destroyed public records, refused to return his seized dogs or license them because of his race, and refused to provide information of an appeal process . The relevant facts relating to Brubaker's involvement with Range are as follows:

Brubaker was employed by the City of South Bend ("the City") as an Animal Control Officer from May, 2003 until November, 2007. As part of his employment, Brubaker's duties included enforcing the South Bend Municipal Code with respect to the care and control of animals. Brubaker did not, however, have any authority to issue or distribute breeder's licenses. During his employment

---

[2]Range has also attempted to file a Third Amended Complaint which adds a host of additional defendants. That Motion was denied in part and the remainder was taken under advisement pending resolution of the various motions for summary judgment.

with the City, Brubaker's immediate supervisor was Kimberly Lucas ("Lucas").

Relevant to the lawsuit are certain South Bend Municipal Code provisions which regulate the possession, licensing, and breeding of dogs. One provision, for instance, prohibits a person from possessing certain dogs, such as pit bulls, as they have been deemed dangerous animals. The same code also prohibits a person from owning or possessing more than three dogs in their residence and breeding dogs without a license.

During his employment with the City, Brubaker and Lucas were sent out on numerous occasions to investigate complaints against Range or various residences that had some connection with Range. In his Complaint, Range provides a number of dates when he believes Brubaker and Lucas visited his properties. He cites to January 27, 2006, November 25, 2006, December 21, 2006, January 31, 2006, January 31, 2007, February 3, 2007, March 23, 2007, March 30, 2007, April 3, 2007, April 5, 2007, May 4, 2007, and July 13, 2007.[3] The factual detail in Brubaker's briefs is lean to say the least; for instance, it is silent on some of the above dates and the reasons for the visits, as well as who the property owners or lessees were at each of the various residences. As a result, the court is left to glean some of the relevant facts by taking judicial notice of the facts in other Orders entered in this case. Thus, the court shall include those facts, where necessary, to provide a complete factual basis for Range's claims.

On January 27, 2006, after Animal Control received a complaint from a passerby that the residence at 813 North Johnson was harboring pit bull dogs, Brubaker and Lucas drove to the residence (Brubaker Aff. ¶6). There, they observed, allegedly from a public alleyway, several dogs

---

[3]As a result of these visits, he contends that he contacted the prosecutor in an attempt to file trespass charges against Brubaker and Animal Control officials but the prosecutor declined to file such charges. Range has also sued the prosecutor for failing to file trespass charges contending that the decision was part of a conspiracy to violate his civil rights.

in plain view in the backyard enclosed by a six foot fence. Range disputes that the Animal Control officers viewed his dogs from an off-site location. In his deposition (which was interestingly omitted from the record as to this particular summary judgment motion),[4] Range testified that on January 27, 2006, he observed an Animal Control van on the street in front of 813 N. Johnson and one individual in that van had scaled to the top of his fence, took photographs, and returned to the van. (Range Dep. at 17, 30).     Setting aside, at least for now, the dispute of fact as to how the dogs were observed, Brubaker testified that based upon their observation of the dogs and training, he and Lucas both believed the dogs were pit bulls. Brubaker and Lucas then returned to Animal Control to draft a letter to the address requesting the owner to contact Animal Control to discuss the situation. However, before the letter was mailed or received, Range, having observed the Animal Control vehicle in front of his home, appeared at the Animal Control office to inquire about the visit to his property. At that time, Range was told that Brubaker and Lucas were responding to a citizen complaint that he was housing pit bull terriers. Range then informed the officers that the dogs were not pit bulls but American Staffordshire terriers. Range, however, did not have documents to verify the dogs' breed when asked and thus, he was issued a citation for violating the City's code.

Subsequently, Brubaker made additional investigations and inspections of various properties associated with Range. Numerous properties are mentioned in the briefs including 805 N. Johnson Street, 813 N. Johnson Street, 1206 N. Johnson Street, and 2018 S. Kemble Street. It is unclear, however, whether Range was the record owner of all of these properties or a renter of all or some. Range testified in his deposition that at various times he "resided" at all of these residences at different

---

[4] These portions of Range's deposition were not part of the record with respect to Brubaker's motion but were part of the City's Motion for Summary Judgment and thus, the court cannot ignore the existence of these facts since they are present in the record as a whole.

times:

> Q. ...Were you residing at 805 N. Johnson at that time?
> A. Correct
> Q. So you had been at –
> A. I didn't move. Unfortunately the ordinance does not define reside. Reside simply can mean a place to hang out or dwell. So when I'm saying reside, was it a place I hung out? Yes. Was it a place I was at? Unfortunately the ordinance does not define reside. So it was a place I kept my dogs at, and I was there often.
> Q. Where did you live during this time?
> A. I believe during that time, I was right two house down, at 813.
> Q. So that's what you consider your residence to be 813.
> A. At that time, the place that I had a lease with was 813.
> Q. Okay. Is that where you slept on a nightly basis?
> A. Correct.
>
> \* \* \* \* \* \*
>
> Q. But you had animals at 805 N. Johnson
> A. Correct.
> Q. But when your complaint says, 805 North Johnson, where the plaintiff resides and harbors his animals, you actually, at that time, were residing at 813?
> A. I was residing at 805. I had a lease at 813. I resided at 813. I resided at 2018. There's a lot of properties and houses that I resided at within the City of South Bend. I had a lease at 813.

Range Dep. at 28-29.

Nevertheless, on some of these occasions, Range made appointments for Brubaker to come to 813 N. Johnson and 1206 N. Johnson, which he apparently leased at some point in time, so that Range could confirm that he was in compliance with the South Bend Municipal Code's dog regulations. On other occasions, Brubaker, with Lucas, would drive by certain properties (805 N. Johnson Street and 2018 S. Kemble) to observe dog activity at these locations. At these latter drive-bys, Brubaker and Lucas observed, by looking over the fences at the properties, more than three pit bulls without any license tags. Brubaker would then approach the front door to the residence and

6

attempt to speak with the house occupants. At several different times, individuals, not Range, would speak with Brubaker. The occupants did not inform Brubaker that Range owned the dogs nor did they mention Range at any time during these discussions.

At other times when Range would invite Brubaker an Lucas to inspect certain premises, he would answer the door. Range insisted that the dogs were not pit bull terriers but rather they were American Staffordshire terriers. Brubaker and Lucas routinely asked for proof of the breed of the dogs. Range was never able to substantiate his claim with documentation as to the dog's breed. As a result, Brubaker and Lucas issued violations to Range regularly for failure to register his pit bull dogs as dangerous animals in compliance with the South Bend Municipal Code. Range was also issued citations for harboring dangerous animals.[5]

In November 2006, an Animal Control officer (apparently not Brubaker) responded to a call about three unlicensed and neglected pit bull terriers kept in the basement of 2018 Kemble Drive, South Bend, Indiana. An individual named Justin Richhart ("Richhart") was the owner of the home. After further investigation, the officer learned that one of the dogs had a severe skin condition. The officer left an animal welfare alert at the residence advising the owner of the licensing and care requirements for animals harbored at the residence.

Thereafter, on December 21, 2006, Defendant Brubaker arrived at 2018 S. Kemble for a re-check of the dogs and found no improvement in the condition of the animals since the last visit in November. Again, Brubaker left an animal welfare alert regarding licensing and neglect of animals at the residence. Subsequently, Animal Control received a message from Richhart wherein he stated

---

[5]The City's regulations require additional fencing, insurance coverage, and warning signs when an individual registers a dangerous animal.

that he had surrendered two of the dogs to the Animal Control office in Michigan and the third dog was given to a new owner in Michigan. However, Animal Control officials could not locate any of the surrendered dogs nor was Richhart able to provide information on the owner of the third dog.

During a January 31, 2007 recheck, two more unlicensed pit bull terriers were viewed inside the residence. One dog appeared underweight and there were no tracks in the snow surrounding the property to indicate that the dogs had been permitted to go outside. Thereafter, Brubaker requested a warrant to impound the neglected and unlicensed pit bull terriers from the residence of 2018 S. Kemble. The warrant was granted and was served at the residence on February 3, 2007. Two adult dogs and a puppy were impounded as a result of the warrant's execution.

One of the adult dogs Brubaker seized was an American pit bull terrier from 2018 S. Kendall named "Spooky." Spooky was owned by Range who, in turn, went to Animal Control in an attempt to reclaim him. However, there was a dispute as to whether Range was the true owner of the dog and the veterinarian at Animal Control determined the dog had health issues. As a result, Range was denied his dog and he became belligerent and aggressive. Brubaker, in turn, called the South Bend Police and two officers, also defendants in this action, arrived and escorted Range from the premises.

On April 5, 2007, Brubaker filed an affidavit of probable cause requesting that a warrant be issued to impound dogs located at 805 N. Johnson. The residence was owned by Danny Thomas and Melissa Tijerina. Underlying the warrant application are the following facts: Animals at this residence had been the subject of complaints involving animal control ordinance violations. On March 24, 2007, Lucas and Brubaker responded to a complaint that four or more pitbull terriers harbored by Thomas and Tijerina were loose, tearing into trash, and acting aggressively toward individuals. Brubaker observed an area in the front yard set up for the keeping of dogs but there was

8

no food or water and no doghouses. As Brubaker approached the door he heard dogs barking inside and noticed the yard was "littered" with animal waste and trash. No one answer initially; however, Officer Lucas eventually spoke with Thomas about her concerns and the possibility of ordinance violations.[6]

However, on March 30, 2007, Brubaker again noticed two unlicensed pitbulls in the front yard of the residence. Brubaker photographed the property and the animals in the yard. The lawn was in the same condition it had been a week earlier and no occupants of the residence answered when Brubaker knocked. On both the March 24 and the March 30 visits, animal welfare alerts were left at the property advising the owner of the licensing and care requirements for the animals they harbored.

On April 5, 2007, the judge issued a warrant for the inspection and seizure of any unlicensed or dangerous dogs on the property. The warrant was served on April 7, 2007 and three dogs were impounded as a result of the execution of the warrant.

In his Complaint, Range also mentions an incident that occurred on July 13, 2007, when his dogs were allegedly seized during a public protest. This Court has previously described the incident when ruling on Range's Motions for Partial Summary Judgment and recounts the incident as follows:

> On July 13, 2007, Range asserts that he was taking part in a public gathering to petition the government for "a correction or repair of South Bend Municipal Code" relating to the licensing of American Pit Bull terriers. Range further asserts generally that his right to freedom of assembly was violated by the defendants.
> On that day, South Bend police officer [Suzanne] Dieter, who was off-duty at the time, observed several men and six dogs that appeared to be pit bulls in a vicinity near a group of young children. Dieter approached a man later identified as Range, who was present with the dogs, and asked if the dogs were licensed. Range

---

[6]Subsequently, on March 27, 2007, Melissa Tijerina licensed one of the dogs she was harboring at the residence.

> responded that all of the dogs were licensed except one and told Dieter that she could check it out. Dieter, in turn, contacted Animal Control, to determine whether the dogs were, in fact, licensed. Dieter was instructed to look at the dog tags on the dogs to get their identification numbers. According to Dieter's police report, Range became loud and belligerent, stepped into the street yelling at the cars to pull over and "come and watch the police harass the Africans." Dieter instructed Range to stop yelling and interfering with the progress of traffic. Range continued and further refused to provide the dog tag numbers or licensing information for the dogs. At some point Dieter reported to [Gary] Libbey, the Animal Control Supervisor, that Range had several dogs that appeared to be American pit bull terriers and these dogs were on the public right of way within the City in violation of the South Bend Municipal Code. .When Libbey arrived on the scene, he determined that three of the dogs were not properly licensed and impounded those three dogs [pursuant to the South Bend Municipal Code]. The dogs also were not muzzled in accordance with the requirements of the South Bend Municipal Code and, according to Dieter, were being controlled by minors which, again is contrary to the statute.

Although he is not listed in the recitation above, Brubaker states that he was one of the impounding animal control officers along with Lucas and Libbey. Three of Range's dogs were not impounded at this time because they were, in fact, properly licensed.

According to Brubaker, at all times when he and Lucas were conducting inspections of the different locations throughout 2006-2007 where Range kept his dogs, the dogs were always in plain view. Brubaker also avers that he did not enter onto Range's property without consent or a warrant.

Also, in his Complaint, Range alleges that Brubaker told him he could not have his dogs back because he was black. Brubaker denies making that statement.

Based upon the aforementioned facts, Brubaker now moves for summary judgment claiming that Range has not raised a genuine issue of material fact relating to his Fourth Amendment claim against Brubaker and that the remaining contentions do not support a constitutional violation.

## **DISCUSSION**

Section 1983 creates a cause of action to remedy certain deprivations of federal rights, but it

10

is not a source of substantive rights. See *Albright v. Oliver,* 510 U.S. 266 (1994); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (noting that "[section 1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes"). To establish a claim under § 1983, Range must establish that (1) he was deprived of a right secured by the Constitution or federal law, and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). In this case, there is no question that as an Animal Control officer, Brubaker was, in fact, acting under color of state law while performing duties in his official capacity. Thus, Range must demonstrate that Brubaker deprived him of a right secured to him by the Constitution. Range asserts that his Fourth Amendment right to be free from an unreasonable search was violated when Brubaker and other Animal Control officers entered onto his property to investigate complaints about his dogs. In addition, he claims Brubaker further violated his rights by impounding his dogs. The court turns now to these claims.

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. A seizure of personal property or "effects" occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (citation omitted); *see also Pepper v. Village of Oak Park,* 430 F.3d 805, 809 (7th Cir.2005). A dog is considered property for Fourth Amendment purposes and thus, its removal constitutes a "seizure" for purposes of the Fourth Amendment, and must meet that Amendment's constitutional requirements. *See, e.g.*, *Siebert v. Severino,* 256 F.3d 648, 656 (7th Cir.

(,2001); *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir.1994); *Andrews v. City of West Branch,* 454 F.3d 914, 918 (8th Cir.2006); see also, *Ferrell v. Soto*, 2008 WL 342957 (N.D.Ill. 2008) (holding that "it stands to reason that if the Fourth Amendment protects a person's television set and couch, dogs fall under the same analysis."). In this case, Range has asserted both an unlawful search of his property and an unlawful seizure of his dogs.

To succeed on either of these Fourth Amendment claims, a plaintiff must demonstrate standing, which requires a showing that he had a reasonable expectation of privacy in the place that was searched. ( See *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *Rakas v. Illinois,* 439 U.S. 128, 143-44 and n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Property ownership alone is insufficient to confer standing to contest a search under the Fourth Amendment. *See, e.g., Georgia v.. Randolph,* 126 S.Ct. 1515, 1521 (2006) ("Fourth Amendment rights are not limited by the law of property.") Instead, a plaintiff must show that he had a reasonable or legitimate expectation of privacy in the premises searched. *See, e.g., United States v. Baker,* 221 F.3d 438, 441 (3d Cir.2000) ( "Standing to challenge a search requires that the individual challenging the search have a reasonable expectation of privacy in the property searched ... and that he manifest a subjective expectation of privacy in the property searched ...." (internal citations omitted)).

In this case, the record is sparse as to whether Range had a privacy interest in any of the properties allegedly subject to an unlawful search. In his deposition, Range claims that he had a lease at 813 N. Johnson and that, at some point, he moved to 1206 N. Johnson. That is enough to raise a question of fact as to whether he has a reasonable expectation of privacy in those residences presuming the alleged unlawful searches occurred during the time he was a tenant.

However, there is nothing in the record to establish that Range had any reasonable expectation

of privacy in the residences at 805 N. Johnson or 2018 S. Kemball. The present record demonstrates that there were other individuals residing in these homes and there is no evidence that Range owned or had any interest as a tenant in these properties. At most, Range had some dogs residing there. Further, even if Range was the record owner of those properties, it is well established that a landlord does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant, and that is occupied by that tenant. *See, e.g., Johnson v. Weaver,* 248 Fed.Appx. 694, 697 (6th Cir.2007). Thus, at least with respect to these latter two properties, Range cannot establish standing to raise a Fourth Amendment claim.

This begs the question then of whether the actions of Brubaker can be said to have violated the Fourth Amendment with respect to the two properties Range alleges he leased. For the most part as was noted in the facts, Range makes blanket assertions that Brubaker and Lucas must have come onto his property without his consent at various times because he has a privacy fence and the dogs could not be seen from outside that fence. He further claims that once they were illegally on his property, they observed activity and took photographs (over the fence and through windows) which they, in turn, utilized to secure a search warrant to eventually seize the dogs.

Generally, a search of a home is per se unreasonable under the Fourth Amendment if conducted without a warrant issued upon probable cause. *See United States v.. Lockett,* 406 F.3d 207, 211 (3d Cir.2005) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)). Both a home and the home's curtilage-i.e., "the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home"-are within the scope of the Fourth Amendment's protection. *United States v. Shanks*, 97 F.3d 977, 979 (7th Cir.1996) (quoting *United States v. Pace*, 898 F.2d 1218, 1228 (7th Cir.1990)).

13

Thus, the government cannot search this area absent a warrant (or some exception to the warrant requirement). But if a search occurs outside the home or the home's curtilage-even if it is on private property-the Fourth Amendment's guarantee applies only if the property owner has a legitimate expectation of privacy in the area.

Here, Brubaker avers that at all times he and Lucas conducted drive-by observation of the dogs and they were "in plain view." However, testimony in the record from Range calls this statement into question and raises a genuine issue of material fact at least as to the January 27, 2007 visit to 813 N. Johnson. Range testified that he observed an Animal Control van on the street in front of 813 N. Johnson and one male individual, which he confirmed was Brubaker by contacting Animal Control, scaling the top of his fence to take photographs, and then return to the van. (Range Dep. at 17, 30). This testimony, absent some legal justification which has not been presented to the court, does thwart Brubaker's motion for summary judgment and raise a genuine issue of material fact as to whether Range's Fourth Amendment rights were violated by the intrusion.[7]

Brubaker cites to *Trimble v. State of Indiana,* 842 N.E.2d 798 (Ind. 2006) for the general proposition that an officer who receives a credible report of a violation from an unidentified concerned citizen my properly enter onto private property through the normal route of access to investigate. "Once there, public viewable evidence of the crime may properly be seized without a warrant, particularly when there is a need to act promptly to protect the health or safety of another, whether human or animal." *Id.* at 800. This case, Brubaker argues, demonstrates that his conduct, even if it involved entrance onto Range's property, was justified by a legitimate investigatory reason.

---

[7]Whether Range suffered any damages from this intrusion is another question since it is unclear whether the January 27, 2007 led to any sort of seizure of the dogs.

In *Trimble*, police responded to a citizen complaint about the condition of a dog at the Plaintiff's residence, entered onto the residence without a warrant, and observed the dog inside a doghouse. Ultimately, the officer impounded the dog (Butchie) and arrested the Plaintiff for cruelty to an animal, abandonment or neglect of an animal, and harboring a non-immunized dog. The Plaintiff challenged the officer's warrantless entry onto the property claiming that his observation of the dog inside the doghouse required a warrant. In concluding that the officer's conduct was justified, the Indiana Supreme Court, citing federal jurisprudence, noted that the Plaintiff's dog was tied up outside in an open yard where "anyone who cared to observe his condition could easily do so."

> The fact that Butchie happened to be inside his doghouse at the particular moment that Barger walked by is irrelevant. Whether the dog is inside the doghouse or exposed to public view is subject to the dog's whims, so there can be no legitimate expectation of privacy in the appearance of a dog that has been tied up in an open area and available to public view.

*Id.* at 803.

The holding in *Trimble* is entirely consistent with federal Fourth Amendment jurisprudence. There can be no legitimate privacy interest in areas readily observable to the public. In *Trimble*, the officer's inspection and observation in that case did not violate the Fourth Amendment because it was made from an area that the public could legitimately be expected to traverse. And, once the officer observed the condition of the dog, he obtained the necessary probable cause to arrest Trimble and impound the dog. The present case, however, is not analogous to *Trimble*. The facts, as articulated by Range, are that his dogs were within a six foot privacy fence the inside of which could not be viewed from any area that the public could be expected to traverse. Under these facts, if believed by the factfinder, when Brubaker scaled the fence to photograph the dogs, he unlawfully entered onto

15

Range's property and his conduct violated the Fourth Amendment.

The same, however, cannot be said for the occasions when Brubaker and Lucas were invited by Range to inspect the home at 813 N. Johnson or 1206 N. Johnson[8] since they validly entered onto the property by Range's consent. Similarly, when they entered upon any of the properties listed in Range's Complaint after obtaining a warrant for seizure of the dogs, this relinquishes any claim of a Fourth Amendment violation.

As for Range's contentions that the seizure of the dogs on various occasions gives rise to a separate Fourth Amendment claim, this claim fails. In each instance where dogs were seized, it was pursuant to a warrant (February 3, 2007 and May 5, 2007 seizures) or because of a violation of a City ordinance in plain view of officers (July 13, 2007 seizure). Moreover, the February and May seizures occurred at residences where Range did not have a reasonable expectation of privacy since he had no property interest or lease interest there. Thus, the seizure of the dogs was justified and Range has no claim of damage resulting from the seizures.[9]

In light of the above, Brubaker's Motion for Summary Judgment is DENIED as to Range's Fourth Amendment claim relating to the unlawful search of his premises.

**Remaining Claims**

Range also makes a host of claims alleging that Brubaker issued him a false breeder's license, denied him certain information he requested, and destroyed public records. The record is undisputed

---

[8]Again, the court has been given no specific details on which of the dates listed by Range were consensual and which were not. Moreover, Brubaker has not provided the court with this information either.

[9]Brubaker may have an argument that he is entitled to qualified immunity but has not asserted any argument in support of such an assertion in his brief. Brubaker mentions qualified immunity but not as to Range's Fourth Amendment claim.

that Brubaker had no authority to issue Range any sort of breeder's license, and the remaining assertions are unsupported by any evidence whatsoever. More importantly, none of the claims rise to the level of a Constitutional violation so as to support a claim for relief under 42 U.S.C. §1983. Thus, Brubaker's Motion for Summary Judgment is GRANTED as to these claims.

**Brubaker's Motion to Amend Affidavit, Range's Motion for Sanctions, and Range's Motion to Strike Brubaker's Affidavit**

Range has filed a Motion for Sanctions against Brubaker as well as a Motion to Strike his Affidavit. The crux of both of these motions is that Brubaker has lied in his Affidavit and thus, he should be sanctioned or the Affidavit should be stricken. In addition, Range points out that Brubaker's Affidavit in support of his motion for summary judgment was not signed.

In response, Brubaker filed his Motion to Amend his Affidavit to include his signature, an oversight in the original filing. As for the other Motions, there are, as the court has indicated, some disputes of fact in the record which a jury must decide. The mere assertion that one party has lied in an affidavit is insufficient to warrant sanctions and thus, both Range's motions are DENIED.

## Conclusion

Based on the foregoing, Brubaker's Motion for Summary Judgment [DE 389] is GRANTED in part and DENIED in part. The Motion to Amend Summary Judgment [DE 432] is GRANTED. The Motion for Sanctions [DE 415] and the Motion to Strike Affidavit [DE 411] are DENIED.

So Ordered this 25th day of September, 2009.

s/ William C. Lee
United States District Court