UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

STEPHEN RANGE,                          )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )       CIVIL NO.  3:07cv480
                                        )
DEVIN BRUBAKER, et al.,                 )
                                        )
        Defendants.                     )

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the municipal defendants[1] in this case on November 11, 2008.  The plaintiff, Stephen Range ("Range"), proceeding pro se, filed his response on February 9, 2009, to which the defendants replied on February 23, 2009.  On March 2, 2009, Range filed a "Motion for Sanction for Submitting Summary Judgment in Bad Faith".  The defendants declined to file a response.

For the following reasons, the defendants' motion for summary judgment will be granted and Range's motion for sanction will be denied.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his

_____

[1]  The municipal defendants include: the City of South Bend, Animal Care and Control, Department of Code Enforcement, South Bend Police Department, Department of Law, South Bend Common Council, City Clerk's Office, Office of the Mayor, and numerous individual defendants in their official capacities.

opponent's claim.  <u>Fitzpatrick v. Catholic Bishop of Chicago</u>, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  <u>Id</u>.  <u>In Re Matter of Wildman</u>, 859 F.2d 553, 557 (7th Cir. 1988); <u>Klein v. Ryan</u>, 847 F.2d 368, 374 (7th Cir. 1988); <u>Valentine v. Joliet Township High School District No. 204</u>, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  <u>Juarez v. Ameritech Mobile Communications, Inc.</u>, 957 F.2d 317, 322 (7th Cir. 1992)(quoting <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, <u>Celotex</u>, 477 U.S. at 323.  The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment.  <u>Goka v. Bobbitt</u>, 862 F.2d 646, 649 (7th

Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities

Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagree-ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

Discussion

This case involves Range's dispute with various agencies and departments within the City of South Bend, stemming primarily from the City's requirement that certain animals be licensed as dangerous animals, and that a breeder's license be obtained by persons wishing to breed dangerous animals in the City. Range is bringing suit pursuant to Section 1983, for alleged violations of his constitutional rights. The defendants seek summary judgment on the basis that Range has not stated a case sufficient to permit the imposition of municipal liability

The law is clear that a municipality cannot be held liable under Section 1983 on a respondeat superior basis. Monell v. New York City Dept. of Social Services, 98 S.Ct. 2018 (1978); Hirsch v. Burke, 40 F.3d 900, 904 (7th Cir. 1994). The defendants claim that Range has failed to present any viable theory upon which municipal liability may be imposed, as he has not presented any evidence of an unconstitutional policy or custom promulgated or put in place by any of the municipal actors, nor has Range identified any failure to adequately train any of the named defendants which could be said to have lead to any of the alleged constitutional violations

in question.

Range has brought many claims against a host of employees with Animal Care and Control. Range asserts constitutional violations and other state law claims against Catherine Toppel, Gary Libbey, Kim Lucas, Karin Balsbaugh, and Robert Sheler. In summary, Range alleges that he was issued a false license to breed pit bulls in the City of South Bend, that public records regarding his dealings with Animal Care and Control were destroyed, that Animal Care and Control employees improperly searched his property on various occasions, that his dogs were unlawfully impounded on July 13, 2007, and that he was improperly required to license his animals as dangerous animals pursuant to the South Bend Municipal Code.

The defendants assert that Range's claim against Catherine Toppel fails as a matter of law. Toppel is the Director of Code Enforcement for the City of South Bend. The City's Animal Care and Control Division falls under her direct supervision. A review of Range's complaint reveals that Range is not seeking to impose supervisory liability against Toppel, but is alleging that her own actions somehow violated Range's rights.

Range first contends that Toppel intentionally and recklessly destroyed public records showing that Range "was issued a breeder's license." Range argues that this conduct, if true, violates I.C. 5-15-6-8 and constitutes a Class D felony. However, such a violation of state law does not create a civil remedy, but gives rise to a criminal charge and penalty, which action can only be initiated by the St. Joseph County Prosecuting Attorney. Moreover, Range has not presented any evidence that Toppel destroyed public records. Toppel has asserted that Range was never issued a breeder's license and therefore such a license could not have been destroyed. The defendants state that Defendant Libbey, who works directly under Toppel, has provided the

best possible explanation for Range's confusion over the alleged issuance of the breeder's license. Defendant Libbey has asserted that Range was never issued a valid authentic breeder's license, but that it is quite possible that when Defendant Libbey printed out and presented Range with the Breeder's License application, a form breeder's license, not signed or authenticated by the City Controller, was printed out as well. However, this unsigned form in no way constitutes a breeder's license. (Affidavit of Cathy Toppel).

Range also claims that Toppel violated I.C. 35-46-2-1 in denying Range "the public accommodation of renewing his dog's pet license." Again, a violation of this statute is a criminal matter, and thus may only be pursued by the prosecuting attorney with the appropriate jurisdiction. In any event, Range has failed to identify how Toppel has deprived Range of his right to renew his pet license, as Toppel has explained that Range would be issued his license whenever he complied with the licensing provisions of Chapter 5 of the South Bend Municipal Code.

Range further asserts that Toppel is obligated to provide Range with information regarding his appeal rights, yet he does not explain how the failure to do so, even if it occurred, violates his constitutional rights. Toppel maintains that she never refused to provide Range with information concerning appeal rights, and that she has no constitutional duty to provide such information.

Range has also contended that Toppel violated his rights by requiring him to license his dogs as dangerous animals. Range asserts that his dogs are Staffordshire Terriers (which are not classified as dangerous animals), and not Pit Bull Terriers (which are classified as dangerous animals and must be licensed as such). However, as Defendant Libbey points out in his

Affidavit, the most skilled and respected dog breeder cannot distinguish a full bred Staffordshire Terrier and an American Pit Bull from their physical appearances and characteristics. Thus, the City requires the owner to present demonstrative proof of breeding that the dog is indeed a Staffordshire Terrier. Absent such proof, the city requires the animal to be licensed as a dangerous animal. Range has not identified what constitutional right he believes Toppel has violated from the enforcement of this ordinance.

Range also alleges that Toppel violated his constitutional rights to public accommodations in not issuing a breeder's license to him. The defendants state that they have made it clear that the reason Range was not issued a breeder's license is because the residential property at which he desired to engage in this breeding activity was not zoned for breeding. As the defendants point out, if Range believed his property was zoned properly to breed animals, he could have made such a challenge in the state courts or alleged that the zoning ordinance was unconstitutional. In the present case, Toppel cannot be charged with violating Range's constitutional rights by simply following the enacted ordinances of the City of South Bend.

Range has alleged that Toppel knowingly and intentionally destroyed public records by destroying tapes from the Animal Control office. The defendants note that the tapes, which had been in the possession of the Prosecuting Attorney's office, have been produced to Range. In any event, there is no evidence that Toppel destroyed the tapes.

Finally, Range asserts that Toppel violated I.C. 35-43-5-2 and I.C. 35-43-5-2.5 regarding counterfeiting and forgery. Again, such violations are criminal charges that must be initiated by the appropriate prosecutorial entity with jurisdiction for its enforcement. Range's assertions are unclear as he does not specify what constitutional right was allegedly violated by Toppel when

she allegedly informed Range that Dr. Carol Ecker was serving on the City's Animal Control Commission when, according to Range's allegations, Ecker was not serving on the Commission. Clearly, even if the allegation is true, the claim fails as a matter of law for failure to articulate how such conduct violated any constitutional rights.

As Range has failed to identify any possible constitutional violations, and has further failed to submit evidence supporting any claim against Toppel, summary judgment will be granted in favor of Toppel.

The defendants next assert that Range's claims against Defendant Libbey fail as a matter of law. Range alleges that Libbey intentionally distributed a false pit bull breeder's license and then intentionally destroyed public records relating to the alleged issuance of this license. The defendants contend, as noted above, that neither the City of South Bend nor Libbey ever issued a breeder's license to Range. The defendants assert that Libbey's affidavit provides a plausible theory for Range's misunderstanding in regard to this matter. To reiterate, Libbey asserts that Range may have received a form of a breeder's license when he was provided with a breeder's license application, but this license form was not an actual license because it was never signed or issued by the City Controller. (See Affidavit of Gary Libbey). The defendants argue that the undisputed fact is that a breeder's license was never issued to Range. Range has never produced a license and defendants have no record of such a license ever being issued. Accordingly, there cannot be a claim for destruction of this non-existent breeder's license. Again, Range does not identify what constitutional right Libbey allegedly violated.

Next, Range alleges that Libbey violated I.C. 5-15-6-8. However, as noted above, a claim of a violation of the above statute may only be brought by the prosecuting attorney with

jurisdiction for prosecuting such a crime.

Range has also alleged that Libbey violated his constitutional rights by requiring him to register his dogs as dangerous animals because they were considered to be pit bull terriers. Libbey has explained that even the most skilled and experienced breeding expert cannot distinguish between an American Pit Bull Terrier and a Staffordshire Terrier. Therefore, all citizens must register dogs alleged to be Staffordshire Terriers as dangerous animals unless they can present proof through breeding documents that the dog is a full bred Staffordshire Terrier. Clearly, Libbey has not violated any of Range's constitutional rights by performing his job as required and carrying out the enforcement of this ordinance enacted by the South Bend Common Council.

Next, Range asserts that Libbey violated his constitutional rights when Libbey participated in the impoundment of several of Range's dogs in July of 2007. However, Libbey, by way of affidavit, presents the equivalent of probable cause to substantiate the decision to impound the dogs. Libbey states that Range was in violation of multiple provisions of the ordinance, in that the dogs were under the control of minors, were on public property without a muzzle and were not wearing tags. Range refused to cooperate by providing Libbey or the South Bend Police Department proof that the dogs were properly licensed. Once Range presented proof that the dogs were licensed, the animals were returned to him.

Range does not articulate what constitutional right Libbey violated in this instance but the defendants note that it could be articulated that the impound of the animals constituted a deprivation of property thereby triggering a procedural due process claim as outlined in <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981). As in <u>Parratt</u>, it was not feasible for the defendants to conduct any

sort of pre-deprivation hearing as the dogs were out on the street in close proximity to young children and the City has no ability to seek judicial intervention in such a short amount of time. Therefore, procedural due process required only the right to a post-deprivation hearing. As in Parratt, Range clearly had the right to initiate a tort action or seek a hearing before the City's Animal Control Commission. In this case, it is undisputed that the dogs were returned to Range once it was determined that some of the dogs were indeed appropriately licensed and at least one of the dogs was being harbored at an address outside the City's jurisdiction.

Finally, Range contends that Libbey violated his rights by allegedly denying him access to a file for the address at 1350 Adams Street. However, Libbey has made it clear that while such a file may have existed in 2005, the City did not have such a file when Range requested it some two years later in July of 2007. Further the alleged materials may not have been filed under that address because Range has had multiple addresses over the years. Additionally, not every action taken by the City necessarily results in the creation and maintenance of a file at that particular address. Range has not identified what right Libbey has allegedly violated in this regard, and Range has not presented any evidence that Libbey destroyed this file.

Clearly, Range's claims against Libbey fail as a matter of law. Range has not presented any genuine issue of material fact in regard to any of his claims against Libbey. Moreover, even if Range's allegations are true, Range has failed to articulate what constitutional right Libbey violated. Accordingly, summary judgment will be granted in favor of Defendant Libbey.

Defendant Kim Lucas also seeks summary judgment. Range has alleged that Lucas entered the properties at 805 N. Johnson Street, 813 N. Johnson Street, and 2018 S. Kemble Street in the City of South Bend without a warrant and after having been denied entry. Lucas

states that she never entered any of Range's properties without Range's consent or without a warrant from the St. Joseph Circuit Court. According to Lucas, Range insisted that Animal Care and Control come to his property to see what type of care his animals were receiving. Lucas further states that she never took any photographs of any of Range's properties. (See Lucas Affidavit).

In his deposition, Range acknowledged that he had absolutely no proof that Lucas had been on any of his properties in violation of his constitutional rights. When asked in his deposition whether he had any personal knowledge of Lucas being on his property at 2018 Kemble Street, Range stated: "[N]o, I don't. Not at this time." (Range Dep. at 17). When Range was asked if he ever saw Lucas on the property at 2018 Kemble Street, he stated: "[O]f course not. I wasn't there." (Id.) Likewise, with respect to the property at 813 N. Johnson Street, Range was not able to provide any evidence of Lucas violating his constitutional rights. Similarly, with respect to the property at 805 N. Johnson Street, Range has no evidence to contradict Lucas' affidavit statement that she never entered this property without a lawfully issued warrant. When Range was asked if he had seen Lucas on his property at 805 N. Johnson Street on March 30, 2007, Range replied that he had not. (Range Dep. at 30). Clearly, Range has no personal knowledge that Lucas violated any of his constitutional rights, and has failed to contradict Lucas' statements in her affidavit that she never entered onto any of Range's properties without consent or a warrant.

Range has also made allegations against Lucas regarding the issuance of the so-called "false" breeders' license and the subsequent destruction of public records. The analysis of this claim is set forth above with respect to Defendant Toppel, and summary judgment will be

granted in favor of Lucas on this claim.

Range also asserts an unarticulated constitutional violation based on the fact that Lucas informed Range that he needed a solid top on his kennels (rather than a tarp), or else he was in violation of the ordinance governing dangerous animals. As Range has not explained how this could possibly constitute a constitutional violation, Lucas will be granted summary judgment on this claim.

Range has also claimed that Lucas violated his constitutional right on July 13, 2007, when several of his dogs were impounded. This is the same claim that Range has made against Defendant Libbey and Defendant Dieter. Lucas acknowledges that on July 13, 2007 she participated in the impoundment of several of Range's dogs. However, Lucas asserts that she personally observed more than one of the animals under the custody and control of juveniles who were clearly under the age of 18. None of the animals had muzzles and they were on public property which violates the ordinance regarding dangerous animals. Moreover, none of the animals were wearing their City dog tags and Range refused to provide Lucas or the police officers on the scene with proof of the animals' registrations. The defendants point out that the animals were promptly returned to Range after the licensing issues were clarified and resolved. Lucas contends that Range's constitutional rights were not violated because there were lawful reasons to impound his dogs, and the dogs were then promptly released to him when the issues were resolved.

Finally, Range alleges that Lucas violated his constitutional rights when she informed him that he needed a breeder's license to breed American Staffordshire Terriers. This argument was also levied against other defendants, as noted above. To reiterate, Range asserts that his

dogs are Staffordshire Terriers, are not dangerous animals, and do not require a dangerous animal license or breeder's permit. However, as discussed above, Range acknowledges that it is impossible to tell whether an animal is a Staffordshire Terrier or an American Pit Bull Terrier (Range Dep. at 37). The City requires proof that the animal is a Staffordshire Terrier and without this proof, requires the animal to be licensed as a dangerous animal to protect the public safety.

As Range has not identified or supported any viable constitutional claim against Lucas, summary judgment will be granted in favor of Lucas.

Range has asserted claims against Karin Balsbaugh. Range alleges that Balsbaugh violated his constitutional rights by intentionally distributing a "false" breeder's license, denying Range entry to the Animal Control offices, and denying his right to inspect certain public records. With respect to the claim regarding the breeder's license, this claim has been alleged against other defendants, as discussed above, and the issue will not be revisited here. Suffice it to say that the same analysis and result apply to Balsbaugh and summary judgment will be granted in her favor on this claim.

Range next alleges that Balsbaugh denied him entry to the Animal Care and Control offices on February 5, 2007. However, the defendants assert that on that date, a no-trespass order had been duly entered ordering Range to stay away from the Animal Control offices due to numerous hostile and disruptive visits by him to the Animal Care and Control business offices. According to Balsbaugh, she informed Range that he was not permitted on the property and that he needed to conduct his business through the City Attorney's Office. (See Balsbaugh Affidavit). Clearly, Range has not identified nor established the violation of his constitutional

rights.

Range further contends that his constitutional rights were violated when he was denied permission to inspect certain public records at the Animal Control offices. Range alleges that Balsbaugh violated I.C. 35-46-2-1 and I.C. 5-14-3-3. However, such violations would constitute criminal offenses, and only the appropriate prosecuting attorney has the jurisdiction to enforce the statutes Range relies upon. The statutes do not create a civil right of recovery. In any event, the defendants created an alternative means for Range to retrieve public records from the City, and Range was informed that he could retrieve the records from the City Attorney's office. (See Defendants' Exhibit 8, Letter from Defendant Leone). Balsbaugh has never denied Range access to the records and, in fact, Range has never explicitly said that the records were not made available. Clearly, Range has failed to identify how Balsbaugh's conduct violated Range's constitutional rights. Thus, summary judgment will be granted in favor of Balsbaugh.

Range has also filed claims against Defendant Sheler. Range alleges that Sheler violated his constitutional rights when he activated an alarm system in the offices of Animal Care and Control. Sheler acknowledges that he activated the alarm system, but explains that he feared for his personal safety and activated the alarm in order to obtain the assistance of law enforcement authorities. Sheler states in his affidavit that Range (who was wearing his holster with his firearm visible) became belligerent and was yelling at Sheler and other Animal Control employees, and was also interfering with other citizens trying to conduct business at the Animal Control offices. (See Sheler Affidavit). Sheler points out that he did not arrest Range and did not become engaged in a physical altercation with Range.

Range has not specified which constitutional right was allegedly violated by Sheler's

actions.  Range alleges that he was later stopped by a South Bend Police Officer, Timothy

Cichowicz, as a result of the alarm being activated by Sheler.  Officer Cichowicz did not arrest

Range, and merely asked him a few questions about what transpired at the Animal Care and

Control office, and permitted him to go on his way.  Range contends that Sheler violated his

constitutional rights by activating the alarm because it resulted in a traffic stop by Officer

Cichowicz.  Clearly, however, Sheler was not the proximate cause of the traffic stop. Martinez

v. California, 435 U.S. 247 (1978); Malley v.  Briggs, 475 U.S. 335 (1986).  Sheler's actions

were similar to that of any citizen who calls upon the police when frightened or aware of

suspicious activity, and such actions wisely have never been held to rise to the level of a

constitutional violation.  Accordingly, summary judgment will be granted in favor of Sheler.

Range has alleged several causes of action against four South Bend police officers

(Officers Janis, Dieter, Vergon and Ruszkowski)  in their individual capacities.   Range's claims

against Officers Janis, Vergon, and Ruszkowski are essentially false arrest claims.    Range's

claims against Officer Dieter alleges racial profiling and unlawful impoundment of Range's

dogs.

On June 1, 2007, Officer Janis arrested Range.  Range states that he went to the Animal

Care and Control offices on June 1, 2007 to apply for a breeder's license.  Officer Janis was

dispatched to the Animal Care and Control offices when employee Sarah Bernth requested

assistance when she felt that Range was causing problems.  When Officer Janis arrived at the

Animal Care and Control offices, she ascertained that Bernth wanted Range to leave the

premises, and had requested Range to leave.  Officer Janis then asked Range to leave the

premises at least two different times.  (See Janis Affidavit).  When Range refused to leave the

premises, Officer Janis asked Range to place his hands behind his back so that he could be arrested for trespass. Officer Janis then transported Range to the St. Joseph County Jail and he was later charged with trespassing.

Officer Janis argues that there was probable cause for the arrest and thus no constitutional violation occurred. The law is clear that not every arrest or imprisonment violates a constitutional right. Baker v. McCollen, 443 U.S. 137 (1979). There is no constitutional guarantee that only the guilty will be arrested. Id. at 145. Thus, there is no constitutional violation if an arrest is based upon a lawfully issued warrant or probable cause, regardless of the outcome of the criminal prosecution. Smith v. Gonzalez, 670 F.2d 522 (5th Cir. 1982); Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989). This court agrees that it is clear that Officer Janis has shown that she had probable cause to arrest Range. Thus, summary judgment will be granted in favor of Officer Janis.

With respect to Officer Vergon, who has been sued for false arrest, Range alleges that on the afternoon of February 3, 2007, Range went to the Animal Control offices to reclaim one of his dogs, Spooky. Officer Vergon was dispatched to the Animal Care and Control offices because Animal Control employees indicated that Range was causing trouble at the offices and would not leave the offices despite being asked to leave. Because it was "Super Bowl" Sunday, and the Animal Care and Control offices were operating with only a few weekend staff members, Officer Vergon asked Range to leave the premises and to come back on Monday when he could speak to a supervisor. Range left the building but insisted on remaining in the property parking lot. (Vergon Affidavit). Officer Vergon continued to request Range to leave the premises, but Range fell to his knees and stated he would only leave if he was taken to jail. Officer Vergon

then arrested Range.

The defendants argue that Officer Vergon had probable cause to arrest Range. The defendants point out that Range was given multiple opportunities to leave the Animal Control offices, yet Range fell to his knees and made it clear he would not leave the property unless arrested. This court agrees that, at the least, Officer Vergon had ample probable cause to arrest Range for trespassing and/or resisting law enforcement. As the existence of probable cause is a bar to a Section 1983 claim for false arrest, summary judgment will be granted in favor of Vergon.

Range has asserted several causes of action against Officer Dieter. Range alleges that Officer Dieter violated his first amendment right to peaceably assemble, requiring Range to license his dogs as dangerous animals, violating his fourth amendment rights by searching without a warrant, falsifying a police report, and unlawfully impounding his dogs on July 13, 2007.

Specifically, Range alleges Officer Dieter violated his first amendment rights on July 13, 2007 when she allegedly interfered with Range's impromptu rally against the City's Animal Control office. The defendants, however, argue that Officer Dieter did not curtail Range's rally, and did not do anything to prevent Range and the other participants from saying what they wanted. The only restriction Officer Dieter placed upon Range was to ask that he not be out in the street where he posed a danger to himself and to persons trying to drive on a busy street. (See Dieter Affidavit). The defendants argue that such a modest restriction is a reasonable restraint that did not in any way abridge Range's first amendment rights. As Range has not supported his claim with any facts that would create a genuine issue of material fact, the court

will grant summary judgment in favor of Officer Dieter on this claim.

Range also argues that Dieter engaged in racial profiling by labeling his dogs as dangerous animals. The defendants point out, however, that Officer Dieter is a South Bend police officer and has no jurisdiction in determining how Range's dogs are licensed. Officer Dieter states that she contacted Animal Care and Control to seek their assistance in ascertaining whether the dogs were properly licensed, but that she did not play any role in making this determination. Range suggests that the finding that his dogs needed to be licensed as dangerous animals constituted racial profiling. Yet he offers no evidence that his race played any role in the labeling of his dogs as dangerous animals. In fact, the only evidence before the court is that Officer Dieter had no role in the labeling of the dogs as dangerous animals. Therefore, summary judgment will be granted in favor of Officer Dieter on this claim.

Range has also asserted that Officer Dieter was present when Range "was falsely arrested by Lt. Scott." However, Range does not even identify Lt. Scott. The defendants note that Lt. Scott has not been named as a defendant in this suit, and the defendants state that they are unaware of any arrests made by Lt. Scott. In any event, Range does not allege what conduct Officer Dieter allegedly engaged in beyond being present during an arrest by an unknown police officer. As there are no facts or evidence to support Range's claim, Officer Dieter will be granted summary judgment on this claim.

Finally, Range alleges that on July 13, 2007, Officer Dieter improperly impounded his animals. Officer Dieter states that on that date she and another police officer were trying to assist a neighborhood association by recruiting more children to participate in a bicycle club in the City of South Bend. According to the defendants, Range and his dogs approached Officer

18

Dieter and another police officer. The neighborhood children were reluctant to approach the police officers with the dogs in the immediate vicinity. Officer Dieter did not impound the dogs, but contacted the Animal Care and Control offices in order to seek their assistance in determining whether the dogs were properly licensed. Animal Care and Control handled the inquiry and there is no evidence that Officer Dieter had any role in the impoundment of the dogs other than contacting the Animal Control offices. As it is clear that there is no evidence supporting Range's claim against Officer Dieter, summary judgment will be granted in her favor on this claim.

Range has also sued Officer Ruszkowski. Range claims that on March 1, 2007, Officer Ruszkowski violated his fourth amendment rights by effectuating a false arrest, falsifying a police report, and also violated his first amendment rights. On March 1, 2007, Officer Ruszkowski received a dispatch concerning an altercation at a Burger King restaurant in the City of South Bend. An employee with the restaurant pointed to a vehicle in which Range was the passenger as the source of the altercation at the restaurant. Based upon that information, Officer Ruszkowski initiated the stop of the vehicle. Range was then very anxious to get out of the vehicle and yelled multiple times that he wanted to get out of the vehicle. Officer Ruszkowski immediately noticed a smell of alcohol emanating from the vehicle. Officer Ruszkowski asked Range if he had been drinking, and Range admitted that he had been drinking. Officer Ruszkowski observed that Range was rather loud, argumentative, and unpredictable in his behavior. (See Ruszkowski Affidavit). Based upon these observations, Officer Ruszkowski arrested Range for public intoxication and disorderly conduct.

The defendants argue that even though Range was not convicted of the offenses for

which he was charged, Officer Ruszkowski had sufficient probable cause for the arrest. As noted above, it is well settled that there is no constitutional violation if an arrest is based upon a lawfully issued warrant or probable cause, regardless of the outcome of the criminal prosecution. Smith v. Gonzales, 670 F.2d 522 (5th Cir. 1982). Thus, as it is clear that Officer Ruszkowski had probable cause to arrest Range, summary judgment will be granted on this claim.

Range also alleges that Officer Ruszkowski falsified a police report in regard to the March 1, 2007 arrest. However, even if true, such an offense is a criminal offense, and does not give rise to a civil remedy. The defendants also assert that the police report did not lead to a conviction and thus Range was not harmed in any way by the police report and none of his constitutional rights were violated.

Finally, Range alleges that Officer Ruszkowski violated his first amendment rights during his arrest. Officer Ruszkowski points out that Range has filed (as part of a prior motion) an unofficial transcript[2] of the arrest. A review of the transcript reveals that there is no evidence that Range's first amendment rights were violated in any way. Accordingly, summary judgment will be granted in favor of Officer Ruszkowski.

Range has also asserted several causes of action against Defendant Leone, the City Attorney for the City of South Bend, and Defendant Nash, the Assistant City Attorney. Range claims that Defendant Leone violated his constitutional rights by limiting and directing how Range was to interact with various City agencies, against which he had filed lawsuits. Specifically Range alleges that the City has infringed on his rights to inspect and copy public

---

[2] Range wrote out, from memory, his version of what was said during the arrest. The arrest was not recorded and there is no official transcript of what transpired.

records as set out in I.C. 5-14-3-3(a). Range refers to a letter sent to him by Defendant Leone, on November 30, 2007, as evidence of violation of his rights.

The court has reviewed the letter in question and holds, as a matter of law, that Range's rights were not violated. The letter merely sets up a process for Range to go through to get access to any public records to which he was entitled. It is clear that the letter does not restrict his access to public records. In any event, if Range felt that his records requests were not being handled properly pursuant to I.C. 5-14-3-3, the statute itself creates a civil remedy at I.C. 5-14-3-9, which provided that an action can be initiated in circuit or superior court to compel the public agency to produce the records. However, Range did not take advantage of this statutory remedy.

The defendants have compiled a comprehensive list of all the public records requests Range initiated, and the results of the request (Defendant Exhibit 14). This exhibit shows that Range has been very active initiating records requests after the November 30, 2007 letter, and the City complied with the vast majority of those requests.

Range argues that any restriction to his access to the working offices of city agencies constitutes a violation of his constitutional rights. However, as the defendants point out, the city government offices are not public forums where citizens are free to disrupt the work of city employees. Adderly v. Florida, 385 U.S. 39 (1966). Clearly, there is no evidence that Defendant Leone violated Range's constitutional rights, and summary judgment will be granted on all claims against Defendant Leone.

Range has also asserted several causes of action against Defendant Nash. Range claims that Nash recklessly and knowingly destroyed public records in that she destroyed a breeder's license that Range insists was issued to him. The defendants point out that it has already been

established that Range was never issued a breeder's license. At most, he may have had in his possession a form of a breeder's license that was never submitted to the City Controller and was never issued by the City. Thus the defendants conclude that there is no evidence that Nash destroyed a public record, since the record in question never existed. Range also asserts that Nash violated his civil rights by not issuing a breeder's license to him. The defendants note that, as a matter of practice, Nash is not the responsible person in the City for issuing such licenses. Nash issued a legal opinion stating that Range could not receive a breeder's permit because of the zoning of his property. That is, Range sought to obtain a breeder's license at his single family home and the zoning in this area does not permit such activities. Nash pointed this out to Range in a letter dated May 24, 2007 (Defendants Exhibit 4). The defendants argue that if Range objected to this finding, he could have challenged this zoning finding or contested the constitutionality of the City's zoning ordinance, but that he did neither. This court agrees with the defendants that Nash's act of interpreting the City's ordinance, and informing Range of this interpretation, is not a violation of Range's constitutional rights. Accordingly, summary judgment will be granted in favor of Nash on this claim.

Range has also made a vague allegation against Nash, claiming that his rights were violated by not allowing him to register dogs he owned but kept at a separate residence. Nash explains that this allegation is too unclear to even respond to, as Range does not identify which dogs he is referring to, and does not explain how the denial to register the dogs were effectuated. The record is clear that Range has licensed some of his dogs. However, he has other dogs that needed to be licensed as dangerous animals, and Range chose not to register the dogs as dangerous animals. Range does not explain if these are the dogs to which he is referring. Nash

states that if Range is referring to the dogs needing a dangerous animal license, then Defendants Toppel, Libbey, and Lucas have explained that Range has dogs that he insists are full bred Staffordshire Terriers, which are not classified as dangerous animals. As explained above, absent proof through breeding documents that the dogs in question are indeed full bred Staffordshire Terriers, the dogs must be licensed as dangerous animals. In any event, Nash, in her capacity as an Assistant City Attorney, is not directly involved with animal licensing issues.

As there is no evidence to support any type of constitutional violation with respect to Nash's actions, summary judgment will be granted in favor of Nash.

Range, in his Complaint, states that he filed a completed application to serve as a member of the Animal Control Commission. Range then names two members of the South Bend Common Council, Timothy Rouse and Karen White, as defendants in this lawsuit because Range was not scheduled for an interview. As usual, Range does not identify what right, either grounded in state or federal law, that Rouse and White violated. In any event, Rouse and White, as members of the South Bend Common Council, are entitled to absolute immunity from civil liability. "Local legislators are entitled to absolute immunity from civil liability under Section 1983 for their legislative activities. The exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." Bogan v. Scott Harris, 523 U.S. 44 (1998). Further, the Seventh Circuit applied a similar analysis to local legislators such as municipal aldermen in Chicago, and held that they were protected by legislative immunity. Biblia Abierta v. Banks, 129 F.3d 899, 905 (7th Cir. 1997). As the decision to appoint a citizen to a commission is a legislative decision, both White and Rouse are entitled to absolute immunity. Therefore, summary judgment will be granted in their favor.

Range has alleged that Defendant Lynn Coleman, assistant to the Mayor, allegedly answered "yes" to Range's question about City officials "not fulfilling their end of the contractual obligation." Again, Range fails to identify how any of his constitutional rights were violated, even assuming the alleged conversation occurred. Accordingly, summary judgment will be granted in favor of Coleman.

Range's Complaint contains several claims based on alleged violations of State law. The defendants point out that Range did not file his Notice of Tort Claim pursuant to I.C. 34-13-3-8 until October 5, 2007 (Defendant Exhibit 2). I.C. 34-13-3-9(a) requires that a claim against a political subdivision or its employees is barred unless there is filed a Notice with the political subdivision within 180 days after the loss occurs. The purpose of this Notice is to provide the political subdivision with an opportunity to investigate, determine liability, and prepare a defense to the tort claim. Orem v. Ivy Tech State College, 711 N.E. 2d 864 (Ind. App. 1999).

It is clear that many of Range's state law claims, specifically those found in paragraphs 1 through 25 of Range's Complaint, stem from incidents that occurred on or before April 4, 2007 and thus are barred pursuant to I.C. 34-13-3-8(a). As noted, the Indiana Tort Claims Act provides that a claim against a political subdivision is barred unless the prescribed Notice is filed within 180 days after the loss occurs. Davidson v. Perron, 716 N.E.2d 29 (Ind. App. 1999). Thus, all of Range's state law claims which relate to incidents that occurred on or before April 4, 2007 are barred by I.C. 34-13-3-8.

Range has filed a motion for sanction against the defendants, as he is of the belief that the defendants filed their summary judgment motion in bad faith. Clearly, however, it is clear that the defendants filed their motion in good faith and have made proper use of Rule 56 which

provides that summary judgment may be sought in a case where there is no issue for trial.

Accordingly, Range's motion for sanction will be denied.

Conclusion

On the basis of the foregoing, the Defendants' Motion for Summary Judgment [DE 329]

is hereby GRANTED.  Further, Range's Motion for Sanction [DE 449] is hereby DENIED.

Entered: September 29, 2009.

s/ William C.  Lee
William C. Lee, Judge
United States District Court